IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

THREE RP LIMITED PARTNERSHIP, )
an Oklahoma limited partnership, )
)
Plaintiff, )
)
v. ) Case No. CIV-18-003-RAW
)
DICK'S SPORTING GOODS, INC., )
a Delaware corporation, )
)
Defendant. )

## O R D E R

Before the court is the motion of the plaintiff for partial summary judgment and the motion of the defendant for summary judgment. This lawsuit involves a commercial lease for real property in Muskogee, Oklahoma.[1] On December 21, 2017, plaintiff commenced an action in the District Court of Muskogee County, Oklahoma. Plaintiff titled its action "Petition for Rent and Possession of Premises." The First Cause of Action states that it seeks rent due for November, 2017. The Second Cause of Action seeks an order of the court placing plaintiff in possession of the leased premises, without terminating the lease. Defendant removed the action to this court on January 5, 2018. Defendant filed a counterclaim (#9) and an amended counterclaim (#21), seeking a declaratory judgment regarding Section 1.6 of the Lease, which sets forth an "Initial Co-Tenancy Requirement."

---

[1] "[O]n September [5], 2014, Defendant Dick's Sporting Goods, Inc. ("DSG") entered into a written lease agreement ("Lease") with landlord Vector Securities Corporation ("Vector") for approximately 40,000 square feet of space in a shopping center known as the Three Rivers Plaza (the 'Shopping Center') in Muskogee, Oklahoma. On March 2, 2015, Vector assigned all rights, title, and interest in and to the Lease to Plaintiff Three RP Limited Partnership ('Plaintiff')." *Three RP Limited Partnership v. Dick's Sporting Goods, Inc.,* 2017 WL 4295193, *1 (E.D.Okla.2017). Henceforward in this order, the court will refer to "plaintiff" or "3RP".

Plaintiff moves for partial summary judgment on two issues: (1) the "right to terminate" asserted by defendant under Section 1.6(c)(i) of the Lease constitutes a penalty and is void under Oklahoma law; and (2) Defendant is estopped from disapproving certain Tenants in the Shopping Center as "Required Tenants" under Section 1.6(a) of the Lease. In its motion, defendant moves for summary judgment as to all claims and counterclaims.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *J.V. v. Albuquerque Public Schs.,* 813 F.3d 1289, 1296 (10th Cir.2016). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).[2]

Section 1.6(a) of the Lease sets forth an "initial co-tenancy provision" at issue here. Section 1.6(a) defines an "Initial Co-Tenancy Requirement" to mean that (1) certain identified key stores are open at the Shopping Center, and (2) a specified portion of the remaining space in the Shopping Center is operated by certain types of national or regional retailers ("Required Tenants") that are actively open and operating as a retail use in substantially all of their premises. In previous litigation, the parties agreed that the first prong was satisfied by the tenancies of TJ Maxx

---

[2] Cross motions for summary judgment are to be considered independently, and the denial of one does not require the grant of another. *See Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.,* 845 F.3d 1330, 1336 n.4 (10th Cir.2017).

and ULTA. *See* 2017 WL 4295193, *1. The previous litigation resolved a dispute as to interpretation of the amount of LFA (leasable floor area) which was required to be open and occupied. Judge Payne's Opinion and Order was entered on September 27, 2017. No appeal was taken.

"Required Tenant" is defined in Section 1.6(a) as being either a "national" retailer operating at least 50 high quality retail stores nationally, or a "regional" occupant satisfactory to DSG in its sole discretion. 3RP claimed that the Initial Co-Tenancy Requirement was met on October 25, 2017, when First United Bank purportedly opened for business in two spaces comprising more than 12,00 square feet of space at the Shopping Center.

The present litigation also requires interpretation of the second prong.[3] It is not disputed that Section 1.6(c)(i) gave defendant the right to terminate the Lease in the event the Initial Co-Tenancy Requirement was not met within two years following the "Rental Commencement Date." The parties further agreed that the Rental Commencement Date "would be deemed to have occurred on October 28, 2015," and that "the Initial Co-Tenancy Requirement was not satisfied as of the Rental Commencement Date." (#64, ¶10, page 7 of 30 in CM/ECF pagination). The Lease included a provision that allowed DSG to take possession of its leased space and pay percentage rent for two years, which DSG elected to do. (#50 at 3, ¶20). The parties disagree as to whether the requirement was satisfied on or before October 28, 2017 (i.e., the two year deadline). On November 9, 2017, defendant provided its notice of termination, terminating the

---

[3] In the previous litigation, Judge Payne interpreted the lease according to Oklahoma law. The parties have not pointed to a lease provision addressing this point and have not objected to application of Oklahoma law.

Lease as of January 26, 2018 (#68-14). On November 10, 2017, plaintiff sent defendant a notice of default, stating that the Initial Co-Tenancy Requirement had been timely satisfied (#68-15).

Plaintiff first argues that the "election to terminate" under Section 1.6(c)(i) is an unenforceable penalty and void under Oklahoma law. *See* 15 O.S. §213. Defendant responds that "DSG's termination right was a legitimate, agreed-upon contract term." (#57 at page 5 of 29 in CM/ECF pagination). The court finds no Oklahoma authority precisely dealing with the situation presented in the case at bar. It has been recognized that "[a] commercial lease may give one party the option to terminate the lease by notice upon the happening of a certain event." *In re 8800 LLC,* 2019 WL 268577, *24 (Bkr. C.D. Calif. 2019). Plaintiff argues that DSG's act of terminating the Lease was unreasonable.

Both parties discuss *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.,* 232 Cal.App.4th 1332 (2015) and reach different conclusions. In that case, the Lease contained a clause granting a tenant an option to terminate upon 30 days' notice if the anchor tenant ceased operations. The court (applying California law) held that "when a commercial lease contains a clause allowing termination upon the occurrence of contingencies that (1) are agreed upon by sophisticated parties and (2) have no relation to any act or default of the parties," the clause did not constitute a penalty. *Id.* at 1367. After finding the first prong satisfied, the court also found the second prong satisfied because "neither Ross [i.e., the cancelling tenant] not Grand Prospect [i.e., the landlord] could control whether Mervyn's [i.e., the anchor tenant] continued to operate a store in the shopping center or whether that space would be occupied by the type of anchor tenant specified in the Lease." *Id.*

This ruling appears to precisely fit the present facts and support a conclusion that the clause

4

does not constitute a penalty. This court, however, finds itself in disagreement with the application of the second prong by the California court. Rather, this court agrees with the present plaintiff that the cancellation in *Grand Prospect* did have relation to acts or default of the parties. (#72 at 4). While the landlord there could not control whether Mervyn's continued operations, it did have the responsibility to bring in a satisfactory replacement anchor tenant. In the case at bar, the Lease imposed the obligation on 3RP to achieve co-tenancy.

If this court were to employ the *Grand Prospect* test (as stated, not as applied, by the California court) the court would find plaintiff – while not meriting summary judgment in its favor-- has raised a genuine dispute of material fact as to whether the cancellation clause herein constituted a penalty. This court, however, declines to adopt that test. No Oklahoma case has adopted the test used in *Grand Prospect*. A federal court is generally reticent to expand state law without clear guidance from the highest court. *SCO Group, Inc. v. International Business Machines Corp.,* 879 F.3d 1062, 1082 (10th Cir.2018). A party encouraging a federal court to apply a new legal principle under state law must make a "strong showing" that the highest court of that state would adopt that principle if presented with the question. *Id.* Plaintiff has failed to make such a showing.

A party invoking the cancellation option (standing alone) is not imposing a penalty; such action merely restores the parties to the *status quo ante*. If (by contrast) terminating the lease were accompanied by seeking to enforce a liquidated damages provision of some sort, such might constitute a penalty, but no such conduct appears here.[4] Plaintiff argues that the provision is

---

[4] As plaintiff notes, the Lease did contain a liquidated damages provision (Section 3.3(c)); this provision, however, involves a different contingency (construction not completed), and was

does not constitute a penalty. This court, however, finds itself in disagreement with the application of the second prong by the California court. Rather, this court agrees with the present plaintiff that the cancellation in *Grand Prospect* did have relation to acts or default of the parties. (#72 at 4). While the landlord there could not control whether Mervyn's continued operations, it did have the responsibility to bring in a satisfactory replacement anchor tenant. In the case at bar, the Lease imposed the obligation on 3RP to achieve co-tenancy.

If this court were to employ the *Grand Prospect* test (as stated, not as applied, by the California court) the court would find plaintiff – while not meriting summary judgment in its favor-- has raised a genuine dispute of material fact as to whether the cancellation clause herein constituted a penalty. This court, however, declines to adopt that test. No Oklahoma case has adopted the test used in *Grand Prospect*. A federal court is generally reticent to expand state law without clear guidance from the highest court. *SCO Group, Inc. v. International Business Machines Corp.,* 879 F.3d 1062, 1082 (10th Cir.2018). A party encouraging a federal court to apply a new legal principle under state law must make a "strong showing" that the highest court of that state would adopt that principle if presented with the question. *Id.* Plaintiff has failed to make such a showing.

A party invoking the cancellation option (standing alone) is not imposing a penalty; such action merely restores the parties to the *status quo ante*. If (by contrast) terminating the lease were accompanied by seeking to enforce a liquidated damages provision of some sort, such might constitute a penalty, but no such conduct appears here.[4] Plaintiff argues that the provision is

---

[4] As plaintiff notes, the Lease did contain a liquidated damages provision (Section 3.3(c)); this provision, however, involves a different contingency (construction not completed), and was

"penal in effect" (#50 at 5), based upon inequitable cost to 3RP and lack of cost to DSG, but the court is not persuaded. The Oklahoma cases cited by plaintiff appear to deal with monetary penalties, and this court finds them distinguishable. *See also* 15 O.S. §§214 & 215.

Plaintiff also argues that "[t]he effect of DSG reserving to itself in the Lease **both** the right to terminate **and** the right to define after the Lease was signed the basis for termination, in its sole discretion, renders the right to terminate provision illusory." (#72 at 2)(emphasis in original).[5] Plaintiff cites *Group One Realty, Inc. v. Dahr Properties,* 404 P.3d 905, 908 (Okla.Civ.App.2017), in which the court ruled that "[a]n offer pursuant to which the promisor retains an option exercisable in his sole discretion will be held illusory unless the court can determine that his discretion is bridled by a good faith or other standard." (quoting 1 *Williston on Contracts* §4:27 (4th ed.)). The court stated: "we hold that the objective 'reasonableness' standard is appropriate for contract provisions that are conditioned on the sole satisfaction of one party." *Id.*

DSG points to other authority, although it likewise is not from the Supreme Court of Oklahoma. "While 'the reservation of a unilateral right to cancel [an] entire agreement is so broad as to negate the existence of any consideration in that the promise is essentially empty or illusory,' if 'notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration.'" *Hardin v. First Cash Financial Services, Inc.,* 465 F.3d 470, 478 (10th Cir.2006)(quoting *Wilson v. Gifford Hill & Co.,*

---

not invoked by DSG. Plaintiff does not contend that the Co-Tenancy Rent defined in Section 1.6 constituted a penalty.

[5] Plaintiff contends that "Occupant is a defined term, but 'national' and 'regional' are not defined terms" and the definitions upon which DSG now relies were not disclosed to 3RP before the Lease was signed. *Id.*

*Inc.,* 570 P.2d 624, 626 (Okla.Civ.App.1977))(emphasis added). Here, DSG right to terminate was not unrestricted; it was subject to a notice requirement.[6] DSG gave such notice, which moreover could only be given after the expiration of <u>two</u> <u>years</u> from the Rental Commencement Date.[7]

There is an argument that, despite the bare language quoted above, a cancellation even given with required notice might be found arbitrary. "Every contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mut. Assurance Adm'rs, Inc.,* 87 P.3d 559, 561 (Okla.2004). In describing the applicable rule, the treatise referenced above states: "[I]f one party to an agreement reserves an unqualified right to cancel the bargain, no legal rights can arise from it while it remains executory. However, if the party may only cancel upon dissatisfaction, *for good cause shown*, in the exercise of the judgment of the promisor as a fiduciary for others, upon the giving of reasonable notice, or upon any other condition not within the promisor's control, the promise is nevertheless enforceable." 1 *Williston on Contracts,* §4:27 (4th ed.)(footnotes omitted)(emphasis added).

As stated, plaintiff argues that because certain terms ("regional," "national," "bank," "deemed retail," and "incidental to retailing") are undefined within the Lease, this leaves the meaning of the terms within DSG's sole discretion. (#72 at 4). Defendant responds that it does not assert such a unilateral right, but rather "the terms should be given their plain meaning and the

---

[6] The cancelling party in *Group One* also provided written notice of its election to terminate the contract. 404 P.3d at 907.

[7] Defendant refers to a 12 month time period (*see, e.g.,* #80 at page 7 of 12 in CM/ECG pagination) but does not explain further.

meaning they are given in the retail leasing industry." (#80 at page 7 of 12 in CM/ECF pagination).

Plaintiff argues that the Initial Co-Tenancy Requirement was met as of October 26, 2017, because the requisite LFA was "leased and open for business." This conclusion was based on the addition of First United Bank ("FUB"), which purported to open a loan office and an insurance office within the Shopping Center. First, plaintiff argues that FUB qualified as a "national occupant" under Section 1.6(a)(i) because it is "deemed retail" and has more than 50 locations. (#77 at 8). The court agrees with DSG that such an interpretation renders the word "national" meaningless. (#80 at page 5 of 12 in CM/ECF pagination). "It is well settled that effect should be given, if possible, to every word, phrase, clause and sentence of a contract." *Cities Serv. Gas Co. v. Kelly-Dempsey & Co., Inc.,* 111 F.2d 247, 249 (10th Cir.1940); *see also* 15 O.S. §157.

In the alternative, plaintiff argues that, even if FUB is considered a "regional occupant," the leasing of its space satisfied the co-tenancy requirement. DSG does not dispute that FUB was a regional tenant. (#87 at page 13 of 23 in CM/ECF pagination). DSG does assert FUB was not a "regional Occupant satisfactory to [DSG] in its sole discretion." (#80 at page 5 of 12 in CM/ECF pagination). The court agrees with DSG and finds DSG's exercise of discretion was reasonable, as the evidence reflects that FUB's offices were not "open . . . fully staffed, stocked and operated by an Occupant in substantially all" of their premises (as the Lease required) on October 28, 2017, or at any time thereafter. DSG cites evidence that the FUB offices did not meet these requirements, and that the loan office and insurance office were not retail businesses. (#80 at pages 3-4 of 12 in CM/ECF pagination). *(See also* #64, ¶¶40-51 at pages 14-17 of 30 in CM/ECF pagination; #87 at pages 12-13 of 23 in CM/ECF pagination).

8

Plaintiff's attempt to dispute these facts is unpersuasive. For example, plaintiff makes a legal argument that because FUB is a bank and therefore deemed retail pursuant to Section 1.4(a) of the Lease, all of FUB's activities are "retail" or "incidental to retail." (#77 at 7). The court finds this interpretation untenable. As defendant argues, "[u]nder 3RP's proposed construction, FUB could have opened a hotel, and it would have been deemed retail." (#87 at page 13 of 23 in CM/ECF pagination). As to staffing, plaintiff argues that the Lease between 3RP and DSG creates no duty for FUB. (#77 at 5). This is strictly true, but the requirements of the Lease between the present litigants remain. Plaintiff also argues that FUB staffing could be delayed under the Lease's force majeure clause, an argument the court will address in due course. Plaintiff states in conclusory fashion that "[t]he FUB location was fully staffed in October, leading into November 2017." (#77 at 8). The court disagrees that this conclusion is supported by the cited testimony.

The record also supports the conclusion that a number of other tenants did not meet the requirements of Section 1.6. DSG states "[a]s DSG's witnesses will testify, consistent with [the] everyday meaning 'regional tenant' is typically understood in the retail leasing industry to refer to retailers that have a significant number or locations across a region of the United States, in more than one state." (#87 at page 14 of 23 in CM/ECF pagination). Under this definition, "at least four tenants are local, rather than regional, and therefore not Required Tenants" *Id.* (listing tenants).[8] Plaintiff notes correctly that "regional" is not defined in the Lease, but does not offer

---

8 Plaintiff also contends that DSG is estopped from disapproving certain tenants, because it failed to object to those tenants during the "lease-up" period. Plaintiff asserts it relied on DSG's lack of objection. The court finds that, under the Lease, DSG had no obligation to object to any particular tenant. Tenants who did not meet the definition of "Required Tenant" were not barred

9

an argument that DSG's interpretation is unreasonable.

Plaintiff argues that the parties to the lease had unequal bargaining power, but the court finds this insufficiently supported by the record. 3RP was itself a sophisticated real estate entity and was represented by experienced real estate counsel. During negotiations, several revisions to the Lease were made for 3RP's benefit. The Lease contained a clause whereby 3RP itself could have exercised cancellation rights under certain circumstances. (Section 12.2(a)(i)). The provision that a Required Tenant shall mean (1) a national occupant or (2) a regional occupant "satisfactory to Tenant in its sole discretion" was freely negotiated. Therefore, the court finds DSG's conduct in cancellation does not demonstrate unreasonableness or absence of good faith. Accordingly, the court finds the right to terminate was valid under Oklahoma law, and properly invoked under a reasonableness test.[9]

Section 17.3 of the Lease contains a force majeure provision. Plaintiff claims that a

---

from becoming a tenant. The Lease merely required that a certain percentage of LFA be occupied by "Required Tenants." The evidence before the court does not establish the elements of equitable estoppel under Oklahoma law. (#64 at pages 26-27 of 30 in CM/ECF pagination). In its response (#77) to defendant's motion, plaintiff does not address the estoppel argument.

[9] The reasonableness of a party's actions is typically a question of fact to be decided by the fact-finder and is not generally appropriate for summary adjudication. *See Concho Constr. Co. v. Okla. Natural Gas Co.,* 201 F.2d 673, 675 (10th Cir.1953). Section 17.18 of the Lease, however, is a waiver of jury trial. Where, as here, the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *See Ultra Clean Holdings, Inc. v. TFG-California, L.P.,* 534 Fed.Appx. 776, 780 (10th Cir.2013). While plaintiff has filed a motion for <u>partial</u> summary judgment, cross-motions exist as to the reasonableness issue. In the context of cross-motions for summary judgment before a bench trial, and under the evidence presented, the court finds the issue of reasonableness sufficiently clear in this case to rule at the summary judgment stage.

May 19, 2017 tornado constituted a Force Majeure Event under the Lease. Again, the court rules to the contrary. Section 17.3(b) requires prompt written notice no later than five business days after the occurrence, including an estimation of its expected duration and probable impact on the performance of obligations.

The record reflects that plaintiff did not provide such notice until September 21, 2017. This is more than four months after the occurrence. The notice also did not provide the required information. "The failure to give proper notice is fatal to a defense based upon a force majeure clause requiring notice." *Sabine Corp. v. ONG Western, Inc.,* 725 F.Supp. 1157, 1168 (W.D.Okla.1989). Moreover, even assuming proper notice, plaintiff has not established a factual question that the tornado prevented plaintiff from performing any obligation under the Lease. (*See* #80 at pages 10-11 of 12 in CM/ECF pagination).

In conclusion, summary judgment in favor of defendant as to all issues is appropriate.

It is the order of the court that the motion of the plaintiff for partial summary judgment (#49) is hereby denied. The motion of the defendant for summary judgment (#63) is hereby granted. The motion in limine of defendant (#78) is deemed moot.

**ORDERED this 12th day of FEBRUARY, 2019.**

*Ronald A. White*
_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA